UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ROWSEVELT DEBEL,

               Petitioner,

     -v-                                 No. 13 Civ. 6028 (LTS) (JLC)

CARL E. DUBOIS, in his Official Capacity as
Facility Director, Detention Facility, Goshen
New York, et al.,

               Respondents.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

         Petitioner Rowsevelt Debel ("Debel"), who has been detained since October 21,

2012, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in connection with removal

proceedings by the United States Immigration and Customs Enforcement ("ICE" or "the

Government").  Debel has been detained pursuant to Section 236(c) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1226(c), which mandates detention for certain criminal

aliens for the duration of their removal proceedings.  Arguing (1) that he is not subject to

§ 1226(c) and is therefore being detained in violation of the law and (2) that he is being detained

in violation of his constitutional rights, Debel seeks an order requiring ICE to grant him a bail

hearing.

         The Court has reviewed Magistrate Judge Cott's thoughtful Report and

Recommendation ("Report") (dkt entry no. 21), which recommends that the petition be granted,

as well as the Government's objections to the Report (dkt entry no. 24).  The Court has

considered thoroughly the record, including Debel's petition ("Petition"), the Government's

Response (dkt entry no. 11), the Government Memorandum in Opposition to Debel's Petition (dkt entry no. 12), Debel's Reply Memorandum (dkt entry no. 16), the Government's letter responding to Debel's Reply Memorandum (dkt entry no. 17), the Report, and the Government's objections.  While the legal issues implicated by the Petition are far from well-settled and the practical necessity of detention in Debel's individual circumstances is questionable, the Court respectfully disagrees with the Report's recommended conclusions regarding the scope of the mandatory detention statute and as to whether Debel's detention under the current circumstances of this case violates constitutional constraints on detention pending removal proceedings. Accordingly, the Court declines to adopt the Report and denies Debel's Petition.

BACKGROUND

This Memorandum Opinion and Order summarizes the pertinent facts, which are explained in further detail in the Report.  Debel is a native and citizen of Haiti and has been a lawful permanent resident of the United States since January 12, 1990.  On November 29, 2005, Debel was arrested for attempted criminal sale of a controlled substance (cocaine) in the third degree in violation of New York law.  He pleaded guilty to that offense and was sentenced on March 21, 2006, to a five-year term of probation.  On June 18, 2008, he was re-sentenced to one year of imprisonment for violating the terms of probation.  On March 27, 2008, Debel was arrested for endangering the welfare of a child and certain sex offenses.  He pleaded guilty to endangering the welfare of a child on July 21, 2008, and was sentenced to 90 days of imprisonment.  He served the sentence and was released into the community, finding employment as a shoe salesman.

On October 21, 2012, ICE's Fugitive Operations Team arrested Debel at his home.  ICE subsequently served Debel with a Notice to Appear ("NTA") in order to begin

removal proceedings against him.  The NTA charged that Debel was subject to removal pursuant to: (1) 8 U.S.C. § 1227(a)(2)(B)(i), for having been convicted of a violation related to a controlled substance; (2) 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony (specifically, an offense related to an attempt to commit illicit trafficking in a controlled substance); and (3) 8 U.S.C. § 1227(a)(2)(E)(i), for having been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment.  Based on these prior convictions, ICE determined that Debel was subject to mandatory detention under 8 U.S.C. § 1226(c).

On November 20, 2012, Debel had his first appearance before an immigration judge.  Due to three requests for continuances made by Debel and one Government error, which led to a continuance, a hearing regarding Debel's removability did not occur until May 22, 2013, at which time the immigration judge found that Debel was removable as charged in the NTA. The May 22 hearing was continued three more times in order to accommodate Debel's preparation of an application for relief from removal.  On December 19, 2013, on Debel's request, a bond hearing was held, during which the immigration judge denied his request for change in custody status, finding that he was subject to mandatory detention.  On February 3, 2014, the immigration judge rejected Debel's application for relief from removal and entered an order of removal.

On August 15, 2013, Debel filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking immediate release from custody upon reasonable conditions of supervision or, in the alternative, a bail hearing at which the Government would have the burden of demonstrating that his continued detention is justified.  Pet. at 13.  The Government responded, opposing his habeas petition.  On February 25, 2014, Judge Cott issued his Report,

which recommends that the Court grant Debel a writ of habeas corpus and direct the
Government to provide Debel with an individualized bond hearing.  On March 17, 2014, the
Government filed its objections to the Report ("Objections"), which challenge the Report's legal
conclusions.

<u>DISCUSSION</u>

When reviewing a report and recommendation, the Court "may accept, reject, or
modify, in whole or in part, the findings or recommendations made by the magistrate."  28
U.S.C.S. § 636(b)(1) (LexisNexis 2013). Where a party submits objections to a report and
recommendation, the district court reviews <u>de novo</u> the aspects of the report to which the party
objected.  <u>See</u> Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); <u>United States v. Male Juvenile</u>,
121 F.3d 34, 38 (2d Cir. 1997).  The Court has considered thoroughly the record herein and, for
the following reasons, the Court denies the Petition.

The principal legal conclusions upon which the Report's recommendation is
based, and to which the Government objects, are (1) that the detention mandate of 8 U.S.C. §
1226(c) does not reach an individual who, like Debel, had been at liberty in the community for a
significant period of time after a qualifying conviction and before his arrest and detention in
connection with removal proceedings, and (2) that the length of Debel's detention without a
hearing may violate Debel's constitutional right to due process.  The Court addresses these
issues in turn.

<u>Scope of 8 U.S.C. § 1226(c) Mandatory Detention Authorization</u>

A statute is construed in accordance to the meaning of its plain language unless it
is ambiguous.  <u>See</u> <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S.

837, 843 (1984).  If a statute is ambiguous and an agency with jurisdiction has construed it, a

court must defer to the agency's construction of the ambiguous language if the agency's

construction is based on a reasonable interpretation of the ambiguous provision.  Id. at 842–44.

      Here, the statute in question is § 1226(c), which provides, in pertinent part, that

    (1)    Custody.  The Attorney General shall take into custody any alien who—

        (A) is inadmissible by reason of having committed any offense covered in 8
            U.S.C.S. § 1182(a)(2),
        (B) is deportable by reason of having committed any offense covered in 8
            U.S.C.S.§ 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D),
        (C) is deportable under 8 U.S.C.S. § 1227(a)(2)(A)(i)
        (D) is inadmissible under 8 U.S.C.S. § 1182(a)(3)(B) or deportable under 8
            U.S.C.S. § 1227(a)(4)(B),

    when the alien is released, without regard to whether the alien is released on
    parole, supervised release, or probation, and without regard to whether the alien
    may be arrested or imprisoned again for the same offense.

    (2)    Release.  The Attorney General may release an alien described in paragraph (1)
        only [in limited circumstances that are not applicable in Debel's case].

8 U.S.C.S. § 1226(c) (LexisNexis 2013).

      The Government agrees with the Report that the relationship between the

"when . . . released" provision of the statute and the release restriction provision of subsection

1226(c)(2) is ambiguous, thus satisfying the first Chevron inquiry and necessitating inquiry as to

whether a relevant agency has construed it in a reasonable manner.  See Respondent's Br. at 14;

see also Straker v. Jones, No. 13 Civ. 6915 (PAE), 2013 WL 6476889, at *4–9 (S.D.N.Y. Dec.

10, 2013) (concluding that § 1226(c) is ambiguous).  The "when . . . released" language has been

interpreted by some courts to limit the mandatory detention requirement to aliens who are taken

into the immigration authorities' custody immediately upon, or within a short time after, release

from criminal detention.  See, e.g., Gordon v. Johnson, 2013 WL 6905352, at *6 (D. Mass. Dec.

31, 2013) (holding that "when . . . released" means "at the time of release"); Khodr v. Adduci, 697 F. Supp. 2d, 774, 780 (E.D. Mich. 2010) (finding that immigration authorities have "a reasonable period of time after release in which to take the suspect alien into custody").[1]  On the other hand, the "when . . . released" language may be read simply to identify the first point at which the statute authorizes and mandates detention following a qualifying conviction, without limiting the time period within which such detention is to be effected.

The Board of Immigration Appeals addressed the applicability of § 1226(c) to an alien who was arrested after release into the community in In Re Victor Leonardo Rojas, 23 I. & N. Dec. 117, 2001 WL 537957 (BIA May 18, 2001).  In Rojas, the BIA considered whether ICE's detention without bond of an alien pursuant to § 1226(c) was impermissible under the statute because two days had elapsed between the alien's release from state criminal custody and his apprehension by ICE.  Id.  The alien argued that, because ICE had not apprehended him "immediately" upon his release from criminal custody, he was not subject to mandatory detention under § 1226(c).  The BIA rejected the argument, concluding that, while the "when . . . released" clause was "susceptible to different readings," id. at 120, the "when . . . released" clause, in conjunction with the other concluding clauses, "simply make[s] it plain that the duty to detain is not affected by the character of an alien's release from criminal incarceration or the possibility that an alien may be rearrested on criminal charges" and serves to modify "the statutory command that the 'Attorney General shall take into custody' certain categories of

---

[1]     The undersigned adopted this line of reasoning in an oral ruling in Jean v. Orsino.  See Tr. of Proceeding on June 30, 2011, No. 11 Civ. 3682, Dkt. No. 22, at 7–8.  However, the Court is not bound in this proceeding by its prior decision, which was rendered when the body of law concerning this issue was less well developed.  See Camreta v. Greene, 131 S. Ct. 2020, 2033 n.7 (2011).

aliens" rather than to modify subsections § 1226(c)(1)(A)–(D), which describe the four categories of aliens who are subject to mandatory detention.  Id. at 121.  The BIA expressly rejected the possibility that the "when . . . released" clause modifies "the meaning of 'an alien described in paragraph (1)'" as used in the statute's release restriction provision, reasoning that the statute instead "cover[s] criminal aliens regardless of when they were released from criminal confinement and regardless of whether they had been living within the community for years after their release."  Id. at 122.  As to whether mandatory detention should apply "only if an alien were literally taken into custody 'immediately' upon release" or whether ICE would be allowed "a greater window" of time, the BIA concluded that  it would "be inconsistent with our understanding of the statutory design to construe section [1226(c)] . . . in a way that permits the release of some criminal aliens, yet mandates the detention of others convicted of the same crimes, based on whether there is a delay between their release from criminal custody and their apprehension by the Service."  Id. at 124.

The Report, which the Court has reviewed carefully, concludes that the issues presented by the circumstances of Debel's detention fall outside the scope of those considered by the BIA in Rojas and that, therefore, no Chevron deference to the BIA's interpretation is warranted.  Report at 16–20.  The Court respectfully disagrees with the Report's analysis.  In the Court's view, Rojas squarely addressed the issue of whether the "when . . . released" clause operates as a limit—dependent on the interval between release and apprehension of a criminal alien described in a subdivision of § 1226(c)—on ICE's authority to detain such an alien without bond.  See id., 23 I. & N. Dec. 117 at 124.  While the facts of Rojas and this case are different, the length of time between release and apprehension in this case being much longer, the

reasoning advanced in the Rojas opinion points to the same result.  Finding that a longer delay between release and apprehension would take an alien outside the scope of § 1226(c) would be inconsistent with the BIA's determination in Rojas that the "when . . . released" clause does not modify the meaning of "an alien described in paragraph (1)."  As a result, the Rojas opinion merits Chevron deference, and the BIA's interpretation must be adopted if it is a reasonable construction of the statute.

The Report recommends, in the event that the Court concludes that Rojas's treatment of the apprehension delay issue is other than mere dicta, that the Court should reject the BIA's interpretation as an unreasonable construction of the statute under the second prong of the Chevron inquiry.  Report at 21–23.  An agency's interpretation is reasonable as long as it "'represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, [and a court] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.'"  Chevron, 467 U.S. at 845 (quoting United States v. Shimer, 367 U.S. 374, 382–83 (1961)).  The Report asserts that it would be unreasonable to detain without bond  a criminal alien who would otherwise be subject to mandatory detention under § 1226(c) if there was a significant delay between his release from criminal custody and apprehension by ICE.  Report at 21–22.  It argues that this reading of the statute would allow ICE to wait "ten, twenty, or thirty years . . . before detaining an alien without any right to a bail hearing, even where the alien had lived an exemplary life for all those decades," id. (internal citations and quotations omitted), and concludes that such a result would be inconsistent with Congressional intent, given the

"fundamental principle" that the state ordinarily may not deprive an individual of liberty

indefinitely, id. at 22 (citation and quotation marks omitted).

The Court has carefully considered the Report's thorough discussion of the

serious adverse impact on the "security and stability [of] human affairs" that could be visited

upon aliens who have returned to settled, law abiding lives in the absence of a temporal limit on

ICE's ability to invoke the mandatory detention provision.  See Report at 22 (citation and

quotation marks omitted).  While the Court agrees that Congress could logically have placed the

burden on ICE to prove that criminal aliens who have demonstrated responsible community

behavior over long periods of time pose sufficient risks of danger and flight that they must be

detained during removal proceedings, the legislative history of § 1226(c) indicates that Congress

made a different, permissible, policy choice.  The Supreme Court reviewed this legislative

history at length in Demore v. Kim, 538 U.S. 510 (2003), in the context of a challenge to

Congress's authority to mandate detention during the pendency of removal proceedings.  The

Kim Court found that Congress enacted the mandatory detention provision of § 1226 to address

high rates of pre-removal flight among certain classes of criminal aliens released on bond under

the prior bail regime, noting as well significant rates of recidivism by such aliens while awaiting

deportation.  Id.  In other words, Congress intended for the prior commission of certain offenses

listed in § 1226(c) to serve as a proxy for flight risk.  Id.  Congress, the Kim Court concluded,

had the power to take such a seemingly Draconian step "[i]n the exercise of its broad power over

naturalization and immigration" because "Congress may make rules as to aliens that would be

unacceptable if applied to citizens."  Id. at 522.

The impact of mandatary detention may, as here, be frustratingly harsh in the lives of individuals and the family members who depend on them but, given the concerns that animated the passage of § 1226(c), the Court cannot find that the BIA's interpretation is an unreasonable "accommodation of conflicting policies that were committed to the agency's care by the statute."  Chevron, 467 U.S. at 845 (internal citation and quotations omitted).  The Court must therefore defer to the BIA's interpretation of the statute.

Rule of Lenity

The Report further recommends that the Court invoke the rule of lenity in determining whether Debel should be subject to detention without a bond hearing.  Invoking the rule of lenity is a statutory construction tool of "last resort," see Hosh v. Lucero, 680 F.3d 375, 383 (4th Cir. 2012), and courts have typically invoked the rule of lenity in immigration cases only where an alien's deportability under a statute is ambiguous "because deportation is such a drastic measure," id. at 384 (finding no precedent for applying rule of lenity to situations involving § 1226(c)).  Here, Debel's deportability is not at issue.  The rule of lenity is thus inapposite.

Due Process and Length of Detention

The Government also objects to the Report's conclusion that the length of Debel's continued detention without a bond hearing violates his right to due process under the Fifth Amendment.  In Kim, the Supreme Court held that detention under § 1226(c) for a "limited period" during removal proceedings is constitutional. 538 U.S. at 526.  There, the Supreme Court observed that such proceedings typically took fewer than five months, including appeals, and found a detention period of six months constitutionally permissible.  Id. at 530.

Indefinite detention in connection with removal proceedings without an opportunity for a bail hearing, where there is no possibility of actual removal, violates the due process rights of the detained alien. <u>See</u> <u>Monestime v. Reilly</u>, 704 F. Supp. 2d 453 (S.D.N.Y. 2010) (finding that likelihood of indefinite detention by ICE supported grant of habeas petition where alien was detained pursuant to § 1226(c)); <u>see also</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678, 682 (2001) (application of post-removal-period detention statute codified in 8 U.S.C. § 1231(a)(6) "would raise serious constitutional concerns" if it resulted in indefinite detention). Courts have also recognized that even detention bounded by the parameters of ongoing removal proceedings that could result in actual removal can exceed constitutional limits if the length of the detention is unreasonable. <u>See</u> <u>Kim</u>, 538 U.S. at 530–31 (recognizing implicit time limit in § 1226(c) proceeding); <u>Diop v. ICE</u>, 656 F.3d 221, 231 (3d Cir. 2011) (concluding that § 1226(c) "implicitly authorizes detention for a reasonable amount of time"). However, the sheer length of the proceedings is not alone determinative of reasonableness. Rather, the principal factor considered in constitutional review of detention pending removal proceedings is the degree to which the proceedings have been prolonged by unreasonable government action. <u>Compare</u> <u>Adler v. U.S. Dep't of Homeland Sec.</u>, No. 09 Civ. 4093 (SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) (15-month detention reasonable because there was "no evidence . . . that the government ha[d] dragged its feet"), <u>with</u> <u>Ly v. Hansen</u>, 351 F.3d 263, 272–73 (6th Cir. 2003) (detention unreasonable because INS "drag[ged] its heels indefinitely in making a decision").

Here, as explained in detail in the Report, Debel's detention has been far lengthier than the average proceedings against which the <u>Kim</u> Court measured the detention that had been challenged in that case. Indeed, as the Report observes, Debel will "likely be facing a mandatory

detention of more than two years." Report at 26.  But the length of Debel's detention has been

augmented in large part due to the granting of his requests for numerous continuances to allow

him time to seek representation, to prepare his case in opposition to removal, to seek relief from

the removal order, and by his appeal of the order of removal against him.  Report at 3–4.  The

continuances and appeals process have thus far extended the proceedings by approximately one

year.  Id.  Only one five-week delay—resulting from "logistical problems involving a change in

detention location"—was attributable to the Government.  Report at 4.

           The Court finds that the length of Debel's detention does not violate his due

process rights.  There is no evidence that the immigration authorities have unreasonably

prolonged Debel's removal proceedings and consequent detention.  Cf. Ly, 351 F.3d 263

(detention lengthened due to "the INS . . . drag[ging] its heels indefinitely in making a

decision"); Tijani v. Willis, 430 F.3d 1241, 1241 (9th Cir. 2005) (government requests for

extensions caused delay).  Furthermore, the period of Debel's detention is not indefinite.  Cf.

Monestime, 704 F. Supp. 2d at 458–59 (detention violated due process rights because U.S.

moratorium on deportations to Haiti in the aftermath of an earthquake rendered petitioner's

detention indefinite).  Delays attributable to normal consideration of an alien's appeal of adverse

decisions do not render unreasonable the consequent delay of his ability to gain release into his

home country.  Cf. Kim, 538 U.S. at 532 n.14 ("Respondent contends that the length of detention

required to appeal may deter aliens from exercising their right to do so . . . . As we have

explained before, however, the legal system . . . is replete with situations requiring the making of

difficult judgments as to which course to follow, . . . and . . . there is no constitutional

prohibition against requiring parties to make such choices." (internal citation and quotations

omitted)).  Accordingly, Debel's detention has not been so unreasonably long so as to violate his

constitutional due process rights, and nothing in the current record suggests that it is likely to be prolonged unreasonably.

The Court has considered all of Petitioner's other arguments and finds them to be without merit.

CONCLUSION

For the foregoing reasons, the Court declines to adopt the Report and denies Debel's petition for a writ of habeas corpus.  The Clerk of Court is requested to enter judgment denying the petition and to close this case.

SO ORDERED.

Dated: New York, New York
         April 24, 2014

                                                    /s/  Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  United States District Judge

Copies mailed to:
Rowsevelt Debel
110 Wells Farm Road
Goshen, NY 10924